PAUL M. WARNER, United States Attorney (#3389)
MICHELE M. CHRISTIANSEN, Assistant United States Attorney (#7259)
Attorneys for the United States of America
185 South State Street, #400
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

RECEIVED CLERK

FILED
2003 AUG 27 A 3: 15

U.S. DISTRICT COURT
DISTRICT OF UTAH

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH PAUL DURBOROW,<br><br>Defendant. | Case No. 2:02CR 0499PGC<br>Case No. 2:03CR 0041PCG<br><br>UNITED STATES' RESPONSE TO DEFENDANT JOSEPH PAUL DURBOROW'S OBJECTION TO PRE-SENTENCE REPORT<br><br>JUDGE PAUL G. CASSELL |

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits the following response to defendant Joseph Paul Durborow's Objection to Pre-sentence Report which was prepared in response to the Presentence Report ("PSR") prepared by United States Probation Officer Scott Lambert. Defendant Durborow argues that he should be given a three level decrease in his base offense level pursuant to United States Sentencing Guidelines Section 3B1.2 because his conduct in the course of the conspiracy to sexually exploit children "falls somewhere between that of a minor and minimal participant." The United States disagrees with

defendant's argument that he was a minor participant in the conspiracy to sexually exploit children, and objects to the application of Section 3B1.2(a) in this case. The arguments of the United States are set forth below.

## FACTS

In October of 2002, defendant Joseph Paul Durborow, aka Lazarus, along with approximately twenty named individuals, was named in Count I of a three-count indictment which alleged that the named defendants and others conspired together to sexually exploit minors by engaging in the production and distribution of images of minors engaged in sexually explicit conduct by the following manner and means:

a. Taking and producing photographs of minor children engaged in sexually explicit activity.

b. Transmitting, receiving, and possessing, by use of computers and the United States Postal Service, such photographs among and between members of the conspiracy, and others known and unknown.

c. Entering into oral and written agreements among members of the conspiracy and others known and unknown, which agreements set forth the sexual acts in which members of the conspiracy and others desired to have the children engage.

d. Communicating among and between each other, and others known and unknown, for the purposes of discussing the possession and production of

         child pornography, including but not limited to discussions of sexual situations in which the defendants' desired minors to participate, discussions of specific photographs that would be produced or transmitted by members of the conspiracy and others known and unknown, and, in some cases, to arrange to have minors travel to and among conspirators for the purpose of producing visual depictions of such minors engaged in sexually explicit conduct.

e.    Traveling to and between locations where members of the conspiracy and others known and unknown resided for the purpose of producing visual depictions of minor children, who were in the custody and care of members of the conspiracy, engaging in sexually explicit activity.

These activities among the conspirators and others known and unknown occurred over an approximately two-year period, December 12, 1999, through January 26, 2002. As outlined above, one of the major purposes of this conspiracy was for each member of the conspiracy to transmit, receive, and possess the sexually explicit images taken by the members of the conspiracy. On several occasions, Durborow took sexually explicit photographs of minor females, one of them his adopted daughter, and transmitted those images through the use of his computer. Additionally, Durborow received several sexually explicit images of minors engaged in sexual activity from other members of the conspiracy and retained those images in computer files.

In addition, defendant Durborow owned and operated a "professional" photography studio from his home in Orem, Utah, and ran a commercial web site, www.josephpaulphotography.com, which showed non-pornographic pictures of young female minors. Based upon a review of the emails found on Durborow's computer at the time of his arrest on August 12, 2002, and upon Durborow's own admissions, at the time of his arrest, defendant had almost four hundred individual subscribers to his website. The price of access to his website ranged from $29.95 to $74.95 (for 1 month to 3 month memberships). The credit card confirmations for just these subscribers total over $26,000. Durborow's "customers" were from all over the world, and included a number of the known co-conspirators. Durborow retained many complimentary e-mails from subscribers to his website and some of those individuals received responses from Durborow. Durborow developed relationships with certain subscribers of his web site, and once the relationship was established, Durborow would facilitate "private" shoots for customers where they would supply clothing and a description of the poses for an additional fee. Although the website itself does not contain obviously sexually explicit pictures, Durborow took many sexually explicit pictures and privately provided those pictures to other individuals in exchange for money or other similar pictures. Excerpts from certain instant message chats and emails found on Durborow's computer at the time of his arrest are set forth below:

## ICQ Chat with Tracy Reynolds (Texas) 9/18/1999 2230 hrs.

| | |
|---|---|
| Durborow | Send me the totals |
| Reynolds | totals? Don't understand |
| Reynolds | (sends picture) |
| Durborow | You said you have some full nudes… |
| Durborow | SWEEEET! |
| Reynolds | mostly partial a couple full |
| Reynolds | (sends 3 more pictures) |
| Reynolds | you know we can't be the only ones who enjoy this type of photography. I would love to hook up with some more people who wanted to safely trade some pics. |
| Durborow | Once I've known you for a bit, I will introduce you to one or two. |

## ICQ Chat with Marcel Herdersoe (Switzerland) 7/14/1999 0045 hrs.

| | |
|---|---|
| Durborow | Do you have any pictures of her that you don't put on the net? |
| Herdersoe | from Gabi.. I have about 400 pics |
| Durborow | That sounds good. When I do a shoot, I get pictures that have a little too much skin to post or maybe a peek of underwear, I think these are so cute. I like to trade for these kinds of pictures. Do you like that? |
| Herdersoe | yes, that looks very nice |

According to Detective Mike Casida of the Clovis Police Department, the following chat was between defendant Durborow and a twelve-year old girl from Flower Mound, Texas. Durborow began chatting with this girl when she contacted him and asked about being a model.

## ICQ Chat with J.K. (12 year old female) 8/20/1999 0754 hrs.

| | |
|---|---|
| J | Are you the one who posts the pics in alt.binaries.children? |
| D | I am, who are you? |

| | |
|---|---|
| J | My name is Jennifer and I want to be a model |
| | I like the pics you post |
| D | Thank you. How did you find my name on ICQ? |
| J | I just typed in your nickname |
| D | Oh |
| D | Was there something you wanted to talk about? |
| J | do you have any advice for someone that wants to be a model? |

**9/11/99 1837 hrs.**

| | |
|---|---|
| D | Good. Be careful about talking with adults on the Internet. You shouldn't really even be talking to me. I know I'm OK, but you don't. That doesn't mean I want you to go away. Your'e fun to talk to. |
| J | I know you're OK |
| D | Just be careful. I like you and I wouldn't want anything to happen to you. |
| J | :) Thanks. I like you too. |

**9/12/1999 1141hrs**

| | |
|---|---|
| D | Where are your most ticklish spots |
| J | My feet |
| | My sides |
| | And my thighs |
| D | I'll remember that when you come :) |
| | Not armpits? |
| J | Nope |
| | And I'll find yours |
| D | I'll give you a free shot – it doesn't exist |

**10/7/1999 2128 hrs.**

| | | |
|---|---|---|
| J | hi sweetie! | |
| D | Hi, cutie pie! I can't talk a lot, but I can talk some. | |
| D | I will be in and out. We can talk this way | |
| J | I have to go to bed anyway (wearing my baby spice nightie!) cya soon | honey! |

**10/26/1999 0938 hrs.**

| | |
|---|---|
| D | Did you miss school yesterday too? |
| J | no I went yesterday |
| D | You have a fever? |
| J | no, just a bad cold |
| D | Poor baby! I wish I could cuddle you and make it all better |
| J | <BIG SMILE> |
| D | I will cuddle you in my heart since I can't be there. |
| J | awwwwwww that's so sweet |
| D | I have my moments |

**Date: 2000/05/10 17:11**

**From: "werner reinhold" <qlgs1212@hotmail.com>**

**To: "W. W. Smith" <lazaras@uswest.net>**

>Lazaras,

> Thank you I will watch your site. I much prefer nudes or semi-nudes. I

>know the laws are firm in your country about photos. I also very much like

>under clothing. Please tell me what is possible with your Cindi. She is

>very beautiful. Perhaps we can work out a deal for photos. I keep strict my

>confidence.

>

>Werner

Date: 2000/05/11 07:52

To: "W. W. Smith" <lazaras@uswest.net>

From: "werner reinhold" <qlgs1212@hotmail.com>

>Lazaras,

> No nudes is fine. I understand she is innocent. I would really love

>under clothes shots. I cannot myself buy such clothes. I would not know

>what to obtain! Perhaps you could ask her what she would be willing to

>wear. I would like 25 to 30 such photos. How much would it cost to purchase

>this number?

> I have my brother who lives in Chicago USA that can send US dollars. But

>I prefer to get the photos online. I cannot recieve such photos in the

>mail. My wife would not be happy. This should not be a problem if photos are

>legal in USA. I an very excited about seeing such photos. Please let me

>know as soon as you can when I can get these photos.

> If I enjoy these photos I would like to perhaps purchase others of your

>girls. I would keep these photos to myself and never share them.

>Thank you.

>Werner

Date: 2000/12/13 10:14

From: "W. W. Smith" <lazaras@uswest.net>

To: r.buck@angelfire.com


> hi,

>no problem I understand.well ok lets recap, 30 photo's pink leatard with the white ribbed tights( i sent abby in the tights attatched)foot focus, soles, and standing up feet together,sitting feet strait out soles. next 30 same positions but in umbro soccer shorts and top and those slouch socks i sent the pic before hope you still have it let me know if you

need it again well thats it hope i explained it good enough for you. any probs let me know
>thanks john

>--

>

John,

Thanks, that is exactly the information that I needed. I remembered everything except the outfits because we had talked about several different options.

Do you have a picture of the "umbro soccer shorts"? I want to make sure I get exactly the right thing.

Joe

**Date: 2000/07/26 09:05**
**From: "W. W. Smith" <lazaras@uswest.net>**
**To: Frank82167@aol.com**


At 09:12 AM 07/26/2000 -0400, you wrote:
>i like your idea of 200 pics, for 250.00 i will get another outfitfor cindy,
>iam really a leg guy if you know what i mean?/ thanks frank ,,, i will send
>outfit in 1 week.

>

Frank,

That sounds good. As soon as I recieve the outfits and $125 (cash or moneyorder) I will schedule the shoot and let you know when it will happen. I will guarantee a minimum of 200 pictures with a special emphasis on her legs.

Let me know when you have sent everything (I suggest using Fedex or UPS- costs a bit more, but is more sure). Email me if you have any more questions, otherwise I will wait to hear that you have sent the stuff in about a week.

Joe

Joesph Paul Photography


**Date: 2001/07/11 17:14**

**From: Joseph Paul <Joe@josephpaulphotography.com>**

**To: "Lee Pardue" <lcp_lhci@hotmail.com>**


At 09:42 PM 07/11/2001 +0000, you wrote:

>Dude,

>

>Thanks. I notice you don't show any peeks on your site. What are the chances I could get a couple

>from some of the girls.

>

>FYI: I am the guy behind the Hailei Series.

>

>Lee

>

>BTW: ICQ #93189663

>

Lee,

I have to be careful what I post on my site. While "peeks" can not be considered illegal, I do not wish to draw unwanted attention to myself. For that same reason, i don't chat over ICQ anymore either.

I would be interested in talking to you further as I think Hailei is adorable. I like to keep my conversations private so if you have PGP, please send me your public key. I have attached mine for you.

Date: 2000/01/20 19:42
From: "LAS" <aristof@ix.netcom.com>
To: "W. W. Smith" <lazaras@uswest.net>

> 1) Completely clothed pictures-
> - A skimpy bathing suit, everything covered no focus on any body parts
> - A dress or skirt picture, posed with a leg up. Shows a lot of leg, but
> no underwear.

    The above images present no problem anywhere.

2) "Peek" type pictures-
> - A picture that shows a glimpse of the model's nipple (full or half body
> picture including the face).

    The above images present no problem under federal law. It
    could be problematic under Utah law.

> - A picture that shows panties(under the dress or skirt for example).

    This image could be problematic depending upon the context. It would
    depend on whether it was candid or posed, the focus of the image,
    whether the panties reveal the outline of the genitalia, and of course
    the pose (position of the body).

> - A picture where the model lifts her shirt showing bra (or no bra).

    The above images present no problem under federal law. It could
    be problematic under Utah law.

> - A picture where the model lifts her dress showing panties.

    I believe the above images are prosecutable and should be
    avoided unless one wants to be a test case and risk one's
    freedom.

> 3) Underwear pictures-

> - Underwear pictures (bra and panties), posed.

>> If done like underwear catalogs, fine. But it really depends upon the particular pose.

> - Underwear pictures (bra and panties) where the model straddles a chair
> (full body).

>> Again, depends upon how tight the underwear is and what the context is.

> - Underwear pictures, topless (some development- 10-12)

>> Depends on the pose and setting, and the look on the model's face.

> - Underwear pictures, topless (no development, 8-10)

>> Depends on the pose and setting, and the look on the model's face.

> - Underwear pictures with the model doing gymnastics (split or straddle)

>> Sounds inherently problematic. Why would a model be doing gymnastics in underwear? Since it is not a normal way of doing gymnastics, one could easily surmise that the purpose was a lascivious one, to highlight what is under the clothing (a la Knox).

> 4) Nude pictures

> - Nude pictures, posed with legs closed, from the back or side

>> No problem from the back at all. The buttocks aren't genitalia. (Neither are breasts). The law prohibits only lascivious depictions of the genitalia. Side view shots are probably fairly safe, but it would depend on the particular pose, setting, and look on the model's face.

-12-

> - Nude pictures, posed with legs closed, from the front
>> Depends on the setting, pose, look on the model's face.
> - Nude pictures, posed with legs open naturally, from the back or side
>> Moving into grey area, but anyway depends on the setting, pose, look on the model's face, and who the photographer is.
> - Nude pictures, posed with legs open naturally, from the front
>> Grey area in which who the photographer is becomes more important. Depends on setting, pose, model's face as well.
> - Nude pictures sitting or lying down with one knee up
>> Inherently problematic, unless you happen to have published 20 books by major publishers.
> - Nude pictures sitting with both knees up
>> Totally depends on how it is done. I have such an image in Friends and Strangers (Stanaman). Add to the above criteria, by the way, whether the image is obviously intended as art - e.g., a b&w work will look more like art than color.
> - Nude pictures with the model doing gymnastics(split or straddle)
>> LOL

> All of these pictures would be posed and would be taken for artistic
> expression. They would not focus on specific body parts. Most would be
> full body or half body pictures and all would include the face. All
models
> that I use have a model release signed by the parent(s). For any

-13-

underwear

> or nude pictures, I would include a signed statement that the model's

> parent(s) were present for the shoot.

>> That would substantially reduce the chances that you would be taking anything lascivious. The thinking (and argument) is that the parents should be able to tell if something is awry. (Just be sure the parents aren't getting paid lots of money. That will vitiate their good judgment). You will be able to do a lot more if they supervise the shoot and approve the images that are published.

Hope this helps. The way you can doubly protect yourself is to do the photos and then we can consult before you publish. (I'll probably send you to Jeffrey Douglas to do this.)

Kind regards,

LAS

## ARGUMENT

Defendant argues that his acts in furtherance of the conspiracy were extremely limited because he only received photographs from other members of the conspiracy "on three to four occasions," only sent "soft core" images of minors to others in the conspiracy on a few occasions, and "transmitted communications with other members of the conspiracy which[,] among other topics[,] included the discussion of the production of images of minors engaged in sexually explicit conduct." Def. Br. At 2. Thus, the main

thrust of defendant's argument is that he didn't participate in the conspiracy to exploit children to the extent that his co-conspirators did. The United States responds that an individual who produces child pornography, distributes, receives, trades, and possesses child pornography is not a "minor or minimal" participant in a conspiracy to exploit children simply because he did not produce the most extreme material that was produced by one or more other members of the conspiracy. Specifically, this defendant engaged in all the same activity as the majority of his co-conspirators, including producing child pornography, and receiving, transmitting, and possessing child pornographic images. The fact that some of those convicted co-conspirators should get an upward departure on their sentences for their extreme conduct does not somehow negate Durborow's culpability in this conspiracy.

The Background Commentary to §3B1.2 states that the adjustment may be awarded if the defendant is "substantially less culpable than the average participant." U.S.S.G. § 3B1.2, Application Note 3(A). This Circuit has held that a mitigating role should be determined in comparison to the role of both other defendants and an "average participant" in such a crime. Indeed, the Guidelines do not require adjustment just because multiple participants are involved. Instead, the Guidelines permit courts not only to compare a defendant's conduct with that of others in the same enterprise, but also with the conduct of an average participant in that type of crime. In other words, resort may be had to both internal and external measurements for culpability. *See United States v.*

*Caruth*, 930 F.2d 811, 815 (10th Cir. 1991); *see also United States v. Sanchez*, 914 F.2d 206, 208 (10th Cir.1990) (district court not required to find that defendant was or was not the least culpable participant in determining that defendant's role was not minor). In this case, defendant participated in the same activities/actions that the average defendant convicted of 18 U.S.C. § 2251 (production of child pornography) and 18 U.S.C. §§ 2252A(a)(2)(A) & (a)(5)(B) (receipt and possession of child pornography). Section 2G2.1 of the Guidelines is the appropriate section used to determine the guideline ranges of all those convicted of producing child pornography, no matter how graphic the images are that are produced.

Furthermore, the critical inquiry in considering the application of Section 3B1.2 is thus not just whether the defendant has done fewer 'bad acts' than his codefendants, but whether the defendant's conduct is material or essential to committing the offense. *See United States v. Palinkas*, 938 F.2d 456, 460 (4th Cir. 1991), *vacated on other grounds*, 112 S. Ct. 1464 (1992). A Section 3B1.2 reduction is not warranted solely because other codefendants are more culpable. *See, e.g., United States v. Thomas*, 963 F.2d 63, 65 (5th Cir. 1992) ("[e]ach participant must be separately assessed"); *United States v. West*, 942 F.2d 528, 531 (8th Cir. 1991) ("mere fact that defendant was less culpable than his codefendants does not entitle the defendant to 'minor participant' status"); *United States v. Lopez*, 937 F.2d at 728 ("intent of the Guidelines is not to 'reward' a guilty defendant with an adjustment merely because his coconspirators were even more culpable"); *United*

*States v. Andrus*, 925 F.2d 335, 338 (9th Cir. 1991) (stipulation in plea agreement that defendant was "less culpable" than other codefendants did not preclude government from arguing against minor participant status at sentencing—"being less culpable than one's co-participants does not automatically result in minor status"); *United States v. Zaccardi*, 924 F.2d 201, 203 (11th Cir. 1991) ("fact that a particular defendant may be least culpable among those who are actually named as defendants does not establish that he performed a minor role in the conspiracy").

As set forth above, this defendant's conduct in producing, receiving, transmitting, and possessing images of child pornography violated the same laws as the other co-conspirators. In fact, according to Detective Mike Casida with the Clovis Police Department, Durborow acted as the link to many of the members of the conspiracy by facilitating the introductions of many of the members of the conspiracy. According to certain of defendant's emails, Durborow played a leadership role in the conspiracy in that he was the link that kept the conspiracy together. *See* Attachment A-Link Chart prepared by Detective Casida, Clovis Police Department. Moreover, Durborow operated a commercial business and profited greatly from providing access to his website. Not all 400 of this defendant's website subscribers were scouts looking for models for commercial children's catalogs.

Additionally, although they may not be as graphic as some of the images created by his coconspirators, by transmitting the sexually suggestive pictures he took of minor

females to others involved in the conspiracy and to certain subscribers to his website, Durborow is responsible for putting many inappropriate and illegal images out into the realm of the Internet. There is nothing law enforcement can do at this point to ever permanently control the further distribution of those images. As recognized by the Supreme Court over twenty years ago in *New York v. Ferber*, 458 U.S.. 747, 758-60 (1980):

> The use of children as subjects of pornographic materials is very harmful to both the children and the society as a whole.... Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

The reality of this situation is that Joseph Paul Durborow's daughter, and the majority of his "models," must now spend the rest of their lives wondering about the existence of these images and who may be in possession of them. Durborow's actions in creating these images and putting them in the child pornography distribution realm argues for the denial of defendant's request for this Court to apply Section 3B1.2.

In conclusion, Joseph Paul Durborow participated in the same illegal activity to sexually exploit minor children as his fellow co-conspirators by producing, receiving, transmitting, and possessing child pornographic images, and according to law enforcement agents involved in investigating this conspiracy, Durborow was instrumental

to the survival of the conspiracy and acted as a link between many of the conspirators. Although this defendant's photographs may not be as graphic or may not portray actual sexual assaults of children, his actions make him similarly culpable as his co-conspirators in this conspiracy. Accordingly, the Court should deny defendant's request to consider him a minor participant in the conspiracy pursuant to Section 3B1.2.

DATED this 27th day of August, 2003.

PAUL M. WARNER
United States Attorney

*/s/ Michele Christiansen*

MICHELE M. CHRISTIANSEN
Assistant United States Attorney

Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.